UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO CESAR SANCHEZ MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>FREITAS, et al.,<br><br>Defendants. | Case No. 23-cv-02508-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING IN PART AND GRANTING IN PART REQUEST FOR JUDICIAL NOTICE; DENYING REQUEST TO STRIKE**<br><br>Re: Dkt. Nos. 11, 23 |

Plaintiff Julio Cesar Sanchez-Martinez, a pre-trial detainee housed at Santa Cruz County Jail ("SCCJ"), has filed this *pro se* action pursuant to 42 U.S.C. § 1983. This order addresses the following pending motions: Defendants' motion to dismiss the complaint and related request for judicial notice, Dkt. No. 11; and Plaintiff's motion to strike the motion to dismiss, Dkt. No. 23.

**DISCUSSION**

**I.   Procedural Background**

Defendants filed a motion to dismiss on November 20, 2023. Dkt. No. 11. Plaintiff did not file his opposition by the December 18, 2023, deadline, and did not request an extension of time to file his opposition.[1] On December 11, 2023, Defendants filed a reply in support of their motion to dismiss. Dkt. No. 17. On January 4, 2024, Plaintiff filed a proposed amended complaint. Dkt. No. 19. On June 17, 2024, the Court denied Plaintiff leave to file the proposed amended complaint docketed at Dkt. No. 19 because the proposed amended complaint failed to state any cognizable claim for relief. Dkt. No. 21. The Court noted that Plaintiff's opposition was

---

[1] According to the Court's September 27, 2023 Order of Partial Service, Plaintiff's deadline for opposing the motion to dismiss was 28 days from the date the motion to dismiss was filed. Dkt. No. 4 at 5.

long overdue and ordered Plaintiff to file an opposition by July 17, 2024, and allowed Defendants to file a reply to any opposition by August 17, 2024.  Dkt. No. 21 at 5.  On July 10, 2024, Plaintiff filed his opposition, Dkt. No. 24, and Defendants filed their court-authorized second reply on August 16, 2024, Dkt. No. 27.  The same day that Plaintiff filed his opposition, Plaintiff also filed a pleading titled "Motion to Strike Defendants Unauthorized Affidavits/Documents in support of their Motion to Dismiss."  Dkt. No. 23.  On August 7, 2024, Defendants filed an opposition to this motion.  Dkt. No. 25.  Plaintiff did not file a reply.

## II.   "Motion to Strike Defendants Unauthorized Affidavits/Documents in support of their Motion to Dismiss" (Dkt. No. 23)

Plaintiff has filed a pleading titled "Motion to Strike Defendants Unauthorized Affidavits/Documents in support of their Motion to Dismiss."  Dkt. No. 23.  This pleading requests that the Court strike Defendants' request for judicial notice ("RJN", docketed at Dkt. No. 11-1).  Plaintiff argues that the RJN is being used to present evidence to oppose Plaintiff's complaint; that consideration of the RJN exhibits converts the motion to dismiss to a summary judgment motion; and that Defendants have not given Plaintiff the required notices that should accompany a summary judgment motion.  Dkt. No. 23.  This pleading is an opposition to Defendants' request for judicial notice, not a motion to strike.  Fed. R. Civ. P. 12(f) provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.  This pleading does not allege that the RJN is redundant, immaterial, impertinent, or scandalous.  Rather, the pleading argues that the Court cannot consider the exhibits to the RJN in deciding the motion to dismiss because the exhibits constitute extrinsic evidence, which may not be considered on a motion to dismiss.  Accordingly, the Court DENIES Plaintiff's request to strike Dkt. No. 11-1 because Dkt. No. 11-1 is neither redundant, immaterial, impertinent, or scandalous.  However, the Court has considered the arguments made by Plaintiff in Dkt. No. 23 in deciding Defendants' RJN.

//
//
//

**III.   Motion to Dismiss (Dkt. No. 11)**

   **A.   Request for Judicial Notice (Dkt. No. 11-1)**

      **1.   Legal Standard**

As a general rule, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Fed. R. 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are two exceptions to this rule: the incorporation-by-reference doctrine and judicial notice under Fed. R. Evid. 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Both of these procedures permit district courts to consider materials outside a complaint without converting a motion to dismiss into a summary judgment. *Id.* at 998; *see also Lee*, 250 F.3d at 688-89.

The incorporation by reference doctrine is a judicially created doctrine that allows a court to consider certain documents as though they were part of the complaint itself. *Khoja*, 899 F.3d at 1002. This is to prevent a plaintiff from cherry-picking certain portions of documents that support his claims, while omitting portions that weaken his claims. *Id.* Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Id.* at 1002. However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document. *Id.* at 1002. Under the incorporation-by-reference doctrine, a court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). If these conditions are met, the court may treat such a document as part of the complaint, and may assume the truth of the document's contents for purposes of a motion to dismiss under Rule 12(b)(6). *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1002.

Fed. R. Evid. 201(b) permits a court to notice an adjudicative fact if it is "not subject to

1  reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction;
2  or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably
3  be questioned." Fed. R. Evid. 201(b).
4        In *Khoja*, the Ninth Circuit clarified the judicial notice rule and incorporation by reference
5  doctrine, noting that a court may take "judicial notice of matters of public record," but "cannot
6  take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999
7  (citation and quotations omitted). The Ninth Circuit has clarified that if a court takes judicial
8  notice of a document, it must specify what facts it judicially notices from the document. *Id.* at
9  999. Further, "[j]ust because the document itself is susceptible to judicial notice does not mean
10 that every assertion of fact within that document is judicially noticeable for its truth." *Id.* As an
11 example, the Ninth Circuit held that for a transcript of a conference call, the court may take
12 judicial notice of the fact that there was a conference call on the specified date, but may not take
13 judicial notice of a fact mentioned in the transcript, because the substance "is subject to varying
14 interpretations, and there is a reasonable dispute as to what the [document] establishes." *Id.* at
15 999–1000.

### 2. Analysis

Defendants have filed a request for judicial notice ("RJN"), requesting that the Court take judicial notice of the following four documents, which are attached as exhibits to the RJN.

<u>Exhibit 1, Policy 1004 of the Santa Cruz County Sheriff's Office Correction's Policy Manual</u>: Defendants request that the Court take judicial notice of Policy 1004 of the Santa Cruz County Sheriff's Office Correction's Policy Manual. Policy 1004 sets forth the mail policy challenged in this case. The Court GRANTS IN PART AND DENIES IN PART Defendants' request for judicial notice of Policy 1004 as follows.

The Court takes judicial notice of Policy 1004 because it is a record of a state agency not subject to reasonable dispute. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."). The Court also takes judicial notice of Policy 1004 pursuant to the incorporation by reference doctrine because the mail policy is central to Plaintiff's claim and Plaintiff does not

dispute the authenticity of the copy of Policy 1004 attached to the complaint. *See Marder*, 450 F.3d at 448. Finally, the Court takes judicial notice of Policy 1004 because the mail policy provides context for Plaintiff's claim. *See Mangiaracina v. Penzone*, 849 F.3d 1191, 1193 n.1 (9th Cir. 2017) (taking judicial notice of Maricopa County Jails Rules and Regulations for Inmates to provide context for complaint's claim regarding jail handling of prisoner-plaintiff's legal mail).

The Court takes judicial notice of (1) the existence of Policy 1004, and (2) the specifics of the mail policy as described in Policy 1004 to the extent that they do not dispute the facts alleged in the complaint. *See Khoja*, 899 F.3d at 1002 (improper to assume truth of incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." Specifically, the Court takes judicial notice of the mail policy's provision that SCCJ inmates can download photos, messages, and other mail for free upon their release from custody. Dkt. No. 11-1 at 7.

The Court DENIES Defendants' request for judicial notice of Policy 1004 to prove that SCCJ inmates, including Plaintiff, were provided with explicit notice that the mail policy warned the general public to only send copies of important documents and to not mail originals, as originals would be destroyed after being scanned.

Exhibit 2: November 2, 2021 press release issued by the Santa Cruz County Sheriff, titled "New Procedure for Incoming Corrections Mail" and Exhibit 3: November 3, 2021 Santa Cruz Sentinel Article by Jessica A. York titled "Santa Cruz County to Ban Mail Delivery to Inmates": Defendants request that the Court take judicial notice of the statements made to the press in Exhibits 2 and 3 to determine whether the mail policy is reasonably related to legitimate penological goals. The Court GRANTS IN PART AND DENIES IN PART Defendants' request for judicial notice of the November 2, 2021 press release and the November 3, 2021 Santa Cruz Sentinel article as follows. The Court takes judicial notice of the press release and the article for the limited purposes of acknowledging the existence of these documents. The Court takes judicial notice of the press release because it is an agency record not subject to reasonable dispute and because it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014

1  WL 60197, at *3 n.2 (N.D. Cal. Jan. 7, 2014) (granting request for judicial notice of FDA
2  guidance document because it is document available on government agency website); *Brodsky v.*
3  *Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) (taking judicial notice of press releases
4  pursuant to Fed. R. Evid. 201 but not for truth of contents).  The Court takes judicial notice of the
5  news article to indicate what was in the public realm at the time.  *Von Saher v. Norton Simon*
6  *Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice
7  of publications introduced to indicate what was in the public realm at the time, not whether the
8  contents of those articles were in fact true.") (internal quotation marks and citation omitted).  The
9  Court takes judicial notice of the press release and the news article for the limited purpose of
10 acknowledging the existence of these documents.  But the Court does not take judicial notice of
11 the truth of the contents of these documents, i.e., the truth of the statements made by correctional
12 officials in these document, and DENIES Defendants' request to take judicial notice of these
13 documents to prove that the mail policy is connected to a legitimate penological interest, and to
14 prove that SCCJ inmates, including Plaintiff, were provided with explicit notice that the mail
15 policy warned the general public to only send copies of important documents and to not mail
16 originals, as originals would be destroyed after being scanned.
17       Exhibit 4: SCCJ's mail policy, as posted on the Sheriff's Department's webpage:
18 Defendants request that the Court take judicial notice of the SCCJ mail policy posted on the
19 Sheriff's Department's webpage at
20 https://www.scsheriff.com/Home/InmateVisitingInformation/SantzCruzMailJail.aspx.[2]  The Court
21 GRANTS IN PART AND DENIES IN PART this request for judicial notice.  The Court takes
22 judicial notice of the existence of this website because the webpage is made publicly available by
23 a government entity (Santa Clara County) and neither party disputes the authenticity of the web
24 site or the accuracy of the information displayed.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d
25 992, 998–99 (9th Cir. 2010) (taking judicial notice of list of approved vendors displayed publicly

---

[2] As of the date of this order, the URL address for this page is https://shf.santacruzcountyca.gov/Home/Inmatevisitinginformation/Santacruzmainjail.Aspx (last visited Sept. 24, 2024).

on the school district websites because list made publicly available by government entity and neither party disputed authenticity of websites or accuracy of information displayed). The Court also takes judicial notice of the mail policy described on this website because the mail policy is central to Plaintiff's claim. *See Marder*, 450 F.3d at 448. However, the Court DENIES Defendants' request for judicial notice of this website to prove that SCCJ inmates, including Plaintiff, were provided with explicit notice that the mail policy warned the general public to only send copies of important documents and to not mail originals, as original would be destroyed after being scanned.

### A. Complaint

In relevant part, the complaint alleges as follows. Santa Cruz County Jail chief deputy D. Frietas; lieutenants C. Ramirez, B. Cleveland, Baldwin, and C. Shearer; and compliance officers John Reed, C. Crivello, and D. Robinson knowingly implemented a mail policy that deprived Plaintiff of his physical mail, in violation of the Due Process Clause. The mail policy at issue prohibits SCCJ inmates from receiving physical mail and requires that SCCJ inmates receive their mail in electronic format. Persons wishing to send mail to SCCJ inmates must send their mail to Smart Communications in Florida. If a person sends mail to SCCJ, SCCJ forwards the mail to Smart Communications, but neither the sender nor the inmate recipient are notified that the mail has been forwarded. Smart Communications scans the mail and makes the scan available to inmates via electronic tablets. Thirty days after receipt of the mail, the physical mail is shredded and destroyed. SCCJ inmates were never provided with a letter that explained the full extent of this policy or what would happen to mail after it was scanned. There is one tablet available per six inmates. Inmates are only allowed to print eight pages a month, free of charge. The stated purpose of this new mail policy is to reduce incoming contraband. Because SCCJ is a small facility, this goal could be achieved by the easy alternative of manually inspecting the mail. Plaintiff requests that the Court either strike down the new policy or provide each inmate with a tablet. Plaintiff also requests $1,000 in damages from each defendant to cover the costs of filing this action. *See generally* Dkt. No. 1.

The Court found that, liberally construed, the allegation that the new mail policy deprived

1  Plaintiff of his personal property without due process of law stated a cognizable Fourteenth
2  Amendment due process claim.  The Court found that the complaint did not state a cognizable
3  claim for violation of the First Amendment right to receive mail because it was unclear how
4  receipt of the mail in an electronic format, and not in its original format, violated the First
5  Amendment.  *See generally* Dkt. No. 4.  The Court dismissed the First Amendment claim with
6  leave to amend.  Dkt. No. 4 at 3.  Plaintiff filed a proposed first amended complaint, Dkt. No. 19,
7  and the Court denied leave to file because it failed to state any cognizable claim and waived the
8  Fourteenth Amendment due process claim found cognizable in the screening order, Dkt. No. 21.
9  The operative complaint remains the complaint docketed at Dkt. No. 1.

### B. Legal Standard for Motion to Dismiss

Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a short and plain statement of the plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); *see also Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim."  *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  Notwithstanding this deference, the reviewing court need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint, *Paulsen*, 559 F.3d at 1071, and need not accept as true legal conclusions cast in the form of factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

8

entitlement to relief." *Iqbal*, 556 U.S. at 664; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (quotations and citation omitted).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

### C. Legal Standard for Prison Property Claim

Prisons often ban or limit inmates' possession of certain types of personal property while incarcerated. The Constitution itself does not confer specific property interests. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). However, a property interest that has been initially recognized and protected by state law may be protected under the Due Process Clause of the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 710 (1976); *Roth*, 408 U.S. at 577 (protected property interests "stem from an independent source, such as state law – rules or understandings that secure certain benefits and support claims of entitlement to those benefits."). To assert such an interest, there must be a "legitimate claim of entitlement to it." *Id.* State law creates a "legitimate claim of entitlement" when it "imposes significant limitations on the discretion of the decision maker." *Braswell v. Shoreline Fire Dep't*, 622 F.3d 1099, 1102 (9th Cir. 2010). In other words, state law may create a protected property interest that may not be withdrawn without procedural safeguards only if mandatory language in the law substantively restricts the discretion of state officials. *See Hewitt v. Helms*, 459 U.S. 460, 472 (1983); *Crawford v. A.B. Won Pat Int'l Airport Authority*, 917 F.3d 1081, 1090 (9th Cir. 2019) (if government officials have discretion to grant or deny property interest, property interest is not protected by constitutional right to due process). However, Cal. Code Regs. § 3192 provides that "[a]n inmate's right to inherit, own, sell or convey real or personal property does not include the right to possess such property within the institutions of the department." Therefore, it is doubtful that a California inmate has a legitimate claim of entitlement to possess personal property in prison

1  unless explicitly authorized by other state laws or prison regulations.

2  Ordinarily, due process of law requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978). When the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law. *See Halverson v. Skagit Cty.*, 42 F.3d 1257, 1260 (9th Cir. 1994). Governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient. *See id.* at 1260-61; *see also City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999) (notice of specific state law remedies for recovery of property seized pursuant to warrant not required).

There is no due process violation if the deprivation was justified by a constitutional prison policy. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). A prison policy is constitutional if it is reasonably related to a legitimate government interest. *Id.* The Supreme Court has identified four factors to consider when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-90. A court need not determine the scope of a prisoner's constitutional rights before applying the *Turner* test: if a challenged regulation is reasonably related to legitimate penological interests, it must be sustained regardless of whether, or to what extent, it infringes a constitutional right. *Overton v. Bazzetta*, 539 U. S. 126, 131-32 (2003) (holding that the Court need not consider scope of prisoners' First Amendment right to intimate association because challenged regulation bore a rational relation to legitimate penological interests).

//

**D.     Analysis**

Defendants argue that the complaint should be dismissed because, applying the factors set out in *Turner*, the mail policy is reasonably related to a legitimate penological interest, and therefore constitutional. *See generally* Dkt. No. 11. Defendants argue that *Turner* governs the analysis here because Plaintiff is challenging the constitutionality of the mail policy, and the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), applies to a pretrial detainee's claim that a jail condition amounts to punishment. *See generally* Dkt. No. 27. With respect to the *Turner* factors, Defendants argue as follows. There is a rational connection between the mail policy and the legitimate penological interest of reducing the flow of drugs into the jail and staff exposure to unknown substances in physical mail. Visually inspecting incoming mail for narcotics is ineffective due to increasingly sophisticated methods for disguising narcotic-treated paper. Plaintiff's proposed accommodations – that staff continue to physically examine the mail for contraband and that incoming mail be limited to pre-approved senders – require SCCJ to allocate staff time to screening mail, do not reduce the risk of drugs entering the jail, and do not reduce the risk of staff and inmate exposure to drugs. The mail policy is not an exaggerated response to the concern of drugs entering SCCJ for the following reasons. It is common knowledge that the opioid crisis has infiltrated communities nationwide, that fentanyl is particularly deadly, and that, in 2019, California inmates suffered the highest overdose mortality rate of any incarcerated population in the United States. In addition, destroying physical mail after scanning reduces staff exposure to unknown substances in physical mail, and reduces the risk of exposing third parties to harm if the original mail is returned to the sender. *See* Dkt. No. 11 at 10-18; Dkt. No. 27 at 8-12. Defendants also argue that there has been no property deprivation because, upon release from incarceration, inmates can log into the public website and download their photos, messages, and postal mail for free. Dkt. No. 11 at 18. Finally, Defendants argue that there has been no Fourteenth Amendment violation because both inmates and the public were given notice of the mail policy through the jail's policy manual, which is available to both inmates and the general public; and that the public was further made aware of the mail policy through notices on the jail's website, a November 2, 2021 press release, and statements to the media. Dkt. No. 11 at 18.

Plaintiff opposes the motion to dismiss as follows.

First, Plaintiff argues that the *Turner* test is inapplicable because he is a pre-trial detainee. He argues that the appropriate standard is whether the policy is intended to punish, or whether the policy is arbitrary, purposeless, or excessive in relation to its purpose, citing to *Bell v. Wolfish*, 441 U.S. 520, 538-38 (1979). Dkt. No. 24 at 2.

Second, Plaintiff argues that it is doubtful that the mail is intended to reduce the flow of drugs into SCCJ because drugs continue to enter the jail and jail officials have been unresponsive to Plaintiff's suggestions as to how to ensure drugs are not smuggled in through officers. Dkt. No. 24 at 2.

Third, Plaintiff argues that the mail policy violates the First and Fourteenth Amendments as follows. Inmates never receive the physical mail and instead receive the mail in an electronic format that can only be viewed on tablets owned by Smart Communications. The jail agreed to a contract with Smart Communications that was financially beneficial to the jail and without concern for the inmates' best interest. Specifically, the jail agreed to a contract under which only a set amount of tablets were provided free of charge, but there are not enough tablets to allow inmates to view their mail. Per the contract, Smart Communications provided additional tablets only if there was an increase in revenue. Given that mail is now only available in electronic format, tablets are now a right and should be provided to every inmate. However, tablets are not provided to every inmate and jail officers can deny an inmate access to a tablet at will, including for disciplinary reasons. Dkt. No. 24 at 3.

Fourth, Plaintiff argues that the mail policy is an exaggerated response to the possibility of drugs entering the jail for the following reasons. Jails have smaller populations than prisons. Santa Cruz County Jail houses 319 inmates, which is the smallest jail population of California jails. The new mail policy exacerbates the security issues in the jail because it increases the officers' responsibilities. Officers are now responsible for counting, distributing, inspecting, and charging tablets. As more tablets have been distributed, security issues have increased because inmates use the tablets as shields and weapons, and because inmates use the tablets to block tray slots and pop doors. Plaintiff was denied a tablet after being unfairly being accused of assault merely because he expressed himself. Finally, it is uncertain how long SCCJ will maintain its contract with Smart Communications. If the contract ends, it is unclear if Smart Communications

will maintain the confidentiality of the inmates' mail.   Dkt. No. 24 at 3-4.

The Court GRANTS the motion to dismiss because it is clear from the face of the complaint and the judicially noticed documents that the mail policy does not unlawfully deprive Plaintiff or other inmates of their property.  In California, an inmate's right to possess property does not include the right to possess such property within the institutions of the department.  15 Cal. Code Regs. § 3192.  While the new mail policy prevents inmates from possessing their physical mail while incarcerated at Santa Cruz County Jail, it does not deprive them completely of their mail.  Inmates can access an electronic version of their mail by viewing the mail on a tablet.  Upon their release from incarceration, they can download the electronic version of their mail for free.  Dkt. No. 11-1 at 6-7.  Because the new mail policy does not deprive inmates of their property, SCCJ was not required to provide inmates with notice and an opportunity for some kind of hearing before implementing the mail policy.

The Court DISMISSES the complaint with prejudice.  Amendment would be futile because the due process claim cannot be cured by the allegation of other facts.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (court should permit amendment unless pleading could not possibly be cured by allegation of other facts); *Hartmann v. Calif. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) (complaint alleged that prisoner's religious rights violated by failure to hire full-time Wiccan chaplain; court held that amendment would be futile because court found that full-time chaplains of other faiths and a volunteer Wiccan chaplain were sufficient to meet prisoners' religious rights).

//
//
//
//
//
//
//

**CONCLUSION**

The Court DENIES Plaintiff's motion to strike Defendants' request for judicial notice, Dkt. No. 23; GRANTS IN PART AND DENIES IN PART Defendants' request for judicial notice, Dkt. No. 11-1; and GRANTS Defendants' motion to dismiss the complaint, Dkt. No. 11. The Court DISMISSES the complaint with prejudice. Judgment is entered in favor of Defendants and against Plaintiff, and the Clerk shall close the case.

This order terminates Dkt. Nos. 11, 11-1, 23.

**IT IS SO ORDERED.**

Dated:   9/26/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge